IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GIL A. RODRIGUEZ-RAMOS,

    Plaintiff,

    v.

RUBEN A. HERNANDEZ-GREGORAT, et al.,

    Defendants.

Civil No. 09-1603 (GAG)

**OPINION AND ORDER**

On July 7, 2009 the plaintiff in this case, Gil A. Rodriguez Ramos ("Rodriguez"), filed a verified complaint against Ruben Hernandez Gregorat ("Hernandez"), Secretary of Transportation and Public Works, Santos M. Delgado Marrero ("Delgado"), President and General Manager of the Metropolitan Bus Authority ("AMA" by its acronym from the Spanish "Autoridad Metropolitana de Autobuses"), Gladys Fuentes Cruz ("Fuentes"), Vice President of the AMA's Human Capital Management Office, Judith Morales Morales ("Morales"), Special Aide to the President of the AMA, and the AMA's insurance company. The plaintiff claims that the defendants stripped him of his functions and demoted him because of his political affiliation. He brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his right to due process, equal protection, and freedom of political expression under the Constitution of the United States, as well as several Puerto Rico laws and the Constitution of the Commonwealth.

Presently before the court is defendants' motion to dismiss plaintiffs' claims pursuant to Rule 12(b)(6) (Docket No. 19), which was timely opposed by plaintiffs (Docket No. 25). For the reasons set forth herein, the court **GRANTS** defendants' motion to dismiss (Docket No. 19).

**I.    Relevant Background as Alleged in the Complaint**

The plaintiff, Rodriguez, has worked in the government of the Commonwelath of Puerto Rico, in both career and trust positions, since 1991. In January 2000 he was admitted to the practice of the legal profession. Rodriguez is also a life long member of the Popular Democratic Party ("PDP") and over the past twenty years has held a number of different positions within that party:

member of the Popular Youth; member of the Autonomous Youth Movement of the PDP in the University of Puerto Rico; PDP electoral representative in different electoral units; PDP precinct president; PDP presidential delegate; president of the PDP Public Servants; and member of the PDP Governing Board. The plaintiff was also a member of PDP Governor Anibal Acevedo Vila's cabinet as Executive Director of the Medical Emergency Corps and Administrator of the General Services Administration. Rodriguez also avers that he still participates in television, radio, and other media outlets, where he openly presents himself as a member of the PDP and an advocate of its ideals. The plaintiff further states that all of the defendants are members of the opposing political party, the New Progressive Party ("NPP").

Plaintiff commenced his public employment with the Commonwealth in January 1991, as a career employee in the Office of the Governor. There he held the career position of Executive Official III. In March 1994, the plaintiff was transferred to the Administration of Corrections ("AOC"), where he was appointed to the career position of Adminsitrative Assistant in the Personnel Division by the Administrator of AOC. In November of the same year, the plaintiff was assigned to the Office of Legal Affairs, where he worked as a Legal Technician. In 1995, the plaintiff was admitted to the study of law at the Hostos School of Law as a night student and obtained his Juris Doctor in May 1998. In January 2000, after passing the Puerto Rico Bar Examination, Rodriguez was admitted to the practice of law in the Commonwealth of Puerto Rico.

On April 1, 2000, the plaintiff was appointed to the career position of Attorney I at the AOC, after taking the competitive exam for the position and achieving the highest score of all elegible applicants. On January 9, 2001, the plaintiff was appointed Director of the Office of Legal Affairs at the AOC. A couple of months later, he was appointed Deputy Adminsitrator in Management and Adminsitration at the AOC, a position in the trust service. On April 22, 2002, the plaintiff was appointed Assistant Secretary of Investigations of the Department of Corrections and Rehabilitation and, almost a year later, he was appointed Sub-Administrator of the AOC, both positions in the trust service. On July 29, 2005, he was reassigned to the career position of Attorney I, effective September 1, 2005. On September 16, 2005, Rodriguez was transferred to the position of Deputy Chief of Administration in the Medical Emergency Corps. A year after that, he was also appointed by then Governor Acevedo Vila to the position of Administrator of the General Services, a position

of trust. On November 26, 2007, Rodriguez was named Chief of the Medical Emergency Corps and, almost a year after that, he was reinstated in his career position as Attorney in the General Services Administration. On December 17, 2008, the plaintiff was appointed Special Assistant to the President of the AMA, a position in the trust service.

Following the 2008 elections, on or about January 7, 2009, defendant Delgado was named President and General Manager of the AMA by defendant Hernandez, who had been named Secretary of Transportation and Public Works by the new Governor of Puerto Rico, Luis Fortuño, President of the NPP. Upon the appointment of Delgado as head of the AMA, the plaintiff presented a letter of resignation from the trust position of Special Assistant to the President of the AMA and requested to be reinstated in his career position as Attorney. The plaintiff alleges that he did this "at the defendants' request." (Docket No. 1 at ¶ 37.) On that same date, Rodriguez also requested to meet with Delgado, but the latter did not act upon these requests. On January 30, 2009, the plaintiff wrote Delgado once again requesting his reinstatement as Attorney, but there was no response. From January to June 2009, Rodriguez alleges that he was still in the trust position of Special Assistant to the President, but that he was left without functions and relegated to occasional assignments of legal work. Between January and February, defendant Delgado ordered that the plaintiff's internet access be removed. On or about March 9, 2009, the Executive Secretary to the President told the plaintiff not to worry, because the President had granted his reinstatement request.

On or about May 28, 2009, the union attorney referred a sexual harassment grievance to Rodriguez. The next day, the acting director of the Industrial Area told the plaintiff that the President had instructed him that Rodriguez was not to handle the matter, because the President had assigned all legal matters to outside counsel. Between January and June 2009, Delgado engaged outside attorneys to do legal work at a contract price of aproximately $30,000 monthly, rather than assign Rodriguez to the career position of Attorney at the AMA. On June 15, 2009, the plaintiff asked the Vice President of the Human Capital Management Office, defendant Fuentes, about his reinstatement request in the presence of defendant Morales, who was Special Aide to the President in personnel matters. Fuentes replied that she was not working on that matter and had no information on it, since the request was being handled directly by defendant Delgado without the intervention of the Human Resources personnel. During this time, the plaintiff was still employed

as a Special Assistant to the President, yet was not invited to staff meetings or to any activities which other trust employees of the AMA were attending. He neither performed the duties of a Special Assistant nor those of an Attorney. On most work days, no functions were assigned to him.

Rather than assign him to the requested position of Attorney, in a letter dated June 22, 2009, defendant Delgado appointed the plaintiff to a position he had never held before, as Bus Terminal Administrator, effective July 1, 2009. On June 25, 2009, the plaintiff requested permission to review his personnel file through a standard written form, but was told to submit a written letter to that effect, a treatment that the plaintiff avers is different than that received by other employees. On June 30, 2009, Rodriguez presented the written communication requesting to examine his personnel file. He was never given the requested access. At no time prior to Rodriguez's transfer to the position of Bus Terminal Administrator did any of the defendants or any other member of the Human Resources staff confer or meet with the plaintiff to discuss his reassignment.

## II.  Standard of Review

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and

common sense. Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Iqbal 129 S. Ct. at 1950.

### III.  Discussion

The defendants argue that (1) the plaintiff has failed to state a claim under section 1983 and under the First and Fourteenth Amendments; and (2) the claims under supplemental jurisdiction should be dismissed.[1] The court will address each of these averments in turn.

#### A.  Section 1983

Plaintiff brings his claim for the violation of his constitutional rights under the First and Fourteenth Amendments pursuant to Section 1983. This disposition "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State [. . .].'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983). In order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements of the cause of action: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation. Gutierrez–Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989).

The first element is satisfied in this case against all defendants because the plaintiff alleged that all four defendants are officials of the AMA and that they acted in their capacity as such to alter the conditions of plaintiff's employment. The second element shall be discussed at subsections B, C, and D infra. The third element –causal connection–, is satisfied as to defendant Delgado, since the plaintiff's factual allegations, taken as true, point to this defendant as the one who made the decision to transfer the plaintiff to the position he currently holds as Bus Terminal Administrator.

---

[1] The defendants also argue that the claims for monetary relief against co-defendant Hernandez in his official capacity are barred by the Eleventh Amendment. Given the court's ultimate disposition of the plaintiff's claims, this issue is moot.

It is not satisfied, however, as to defendants Hernandez, Fuentes, and Morales. The only participation that Hernandez could have had, per the factual allegations in the complaint, is limited to the appointment of Delgado as head of the AMA. Similarly, the only factual allegations as to the other two defendants are that Fuentes-Cruz told the plaintiff, in front of Morales, that she was not working on his case because the transfer request was being handled directly by Delgado, without the intervention of the human resources personnel. Because of the positions that these defendants hold within the AMA, the plaintiff makes an implicit assumption that these defendants participated in the decision to transfer the plaintiff. However, there are no additional factual allegations to tie Hernandez, Fuentes, or Morales to the deprivation of the plaintiff's constitutional rights. See Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570) ("To survive a motion to dismiss, a complaint must contain sufficient factualy matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Plaintiff's assumption is, therefore, insufficient to sustain a section 1983 claim.

The plaintiff atempts to bolster his implicit participation argument by reference to Metropolitan Bus Authority Act, P.R. Laws Ann, tit. 23 §§ 601 et seq., which he argues places in the hands of the Secretary of Transportation and Public Works (defendant Hernandez) all necessary personnel transactions at the AMA and requires that they be made in consultation with the Chief of Personnel of the AMA, whom the plaintiff identifies as the Vice President of the Human Capital Management Office (defendant Fuentes) and the Special Aide to the President (defendant Morales). He also cites the Reorganization Plan of 1971, P.R. Laws Ann. tit. 3, § 414, which purportedly also placed the functions of the AMA's Board of Directors in the hands of the Secretary. Notwithstanding the cited legal dispositions, however, the plaintiff's allegations remain conclusory, since no additional facts are alledged to suggest that these defendants in fact participated in the decision.

In the absence of a properly articulated claim against Hernandez, Fuentes, and Morales, the court **DISMISSES** all of the plaintiff's section 1983 claims against these defendants.

**B.    Political Discrimination**

The First Amendment right to freedom of speech protects non-policymaking public employees from adverse employment decisions based on political affiliation. See Padilla-García v.

**Civil No. 09-1603 (GAG)**                                    7

Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000); see also Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Branti v. Finkel, 445 U.S. 507, 516 (1980); Elrod v. Burns, 427 U.S. 347, 354 (1976). In order to establish a claim of political discrimination, a plaintiff initially bears the burden of showing that he or she engaged in constitutionally protected conduct and that political affiliation was a substantial or motivating factor behind the challenged employment action. Gonzalez-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir. 2004) (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 47 (1st Cir. 2004)). To establish a *prima facie* case, the plaintiff must show, or (for the purposes of Rule 8(a)(2)) properly plead, that (1) the plaintiff and the defendant belong to opposing political affiliations, (2) the defendant has knowledge of the plaintiff's affiliation, (3) a challenged employment action occurred, and (4) political affiliation was a substantial or motivating factor behind the challenged employment action. Martin-Velez v. Rey-Hernandez, 506 F.3d 32, 39 (1st Cir. 2007) (citing Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006) (quoting Gonzalez-Blasini, 377 F.3d at 85-86)).

Here, the plaintiff has failed to adequately plead the fourth element of his *prima facie* case: that his political affiliation was the substantial or motivating factor in Delgado's decision regarding his transfer. Evidence that a plaintiff held a trust position under a previous administration of opposing political affiliation, and that the plaintiff is a well-known supporter of a different political party, may not suffice to show that a challenged employment action was premised upon political affiliation. Gonzalez-Blasini, 377 F.3d at 85-86. Demonstrating political animus "requires more than merely juxtaposing a protected characteristic –someone else's politics– with the fact that [the] plaintiff was treated unfairly." Padilla-Garcia, 212 F.3d at 74. Additionally, the First Circuit has held that "[m]ere temporal proximity between a change in administration and a public employee's dismissal is insufficient to establish discriminatory animus." Peguero-Moronta, 464 F.3d at 53 (quoting Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993).

Since the plaintiff has failed to make fact-specific allegations that a causal connection exists between his transfer and his political affiliation, the plaintiff's section 1983 political discrimination

**Civil No. 09-1603 (GAG)**                                             8

claim against defendant Delgado is **DISMISSED**.[2]

    **C.**    **Procedural Due Process**

A viable procedural due process claim must demonstrate a "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' . . . without due process of law." Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996) (citations omitted). "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment." Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985); Galloza v. Foy, 389 F.3d 26, 33 (1st Cir. 2004)). These employees have a right to at least an informal hearing before they are discharged. See Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988). In order to determine whether public employees possess such a property right, the First Circuit requires that the court examine local law and the terms and conditions of the employment arrangement. See Ruiz-Casillas, 415 F.3d at 134. Under Puerto Rico law, public employees are categorized into either career or trust/confidential positions. See id. (citing P.R. Laws Ann. tit.3, § 1349). Trust or confidential employees "intervene or collaborate substantially in the formation of the public policy, [and] . . . advise directly or render direct services to the head of the agency . . . ." Id. (quoting P.R. Laws Ann. tit.3, § 1350). Unlike career employees, who are removable only for cause, trust employees are of "free selection and removal." Id. (quoting P.R. Laws Ann. tit.3, § 1350). Therefore, "trust [employees] do[] not have a constitutionally protected property interest in

---

[2] The court also notes that in his complaint the plaintiff seems to include what could amount to an "inferior to the norm" allegation. Rosario-Urdaz v. Velazco, 433 F.3d 174, 178 (1st Cir. 2006) ("Employment actions short of outright dismissal or demotion are redressable if improperly motivated, but only if the employment action resulted in conditions 'unreasonably inferior' to the norm for that position.") (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218-19 (1st Cir. 1989) (en banc)). Specifically, he alleges that the defendants "demoted [him] to an inferior working position to that to which he is entitled to, assigning to him a salary that is around $3,000/monthly below to that to which he should be entitled . . ." (Docket No. 1 at ¶ 57.) However, the plaintiff does not provide further factual allegations comparing his previous career position, his previous trust position, or the position that he presently holds, with the position that he alleges he is entitled to. Such a perfunctory allegation cannot survive the Iqbal standard, which requires that the plaintiff state a claim to relief that is plausible on its face.

that position." Galloza, 389 F.3d at 34.

In the case at bar, the plaintiff alleges that, though he had submitted a resignation letter, he was still functioning as a trust employee when he was transfered. Thus, the plaintiff had no legitimate expectation of continued employment as a trust employee. Regardless, he was not dismissed, but placed in a career position as Bus Terminal Administrator. The plaintiff makes no argument to the court as to what specific property interest he had, as a trust employee, over the Attorney I position, vis-à-vis the position he was placed in after the transfer. See Feliciano Angulo v. Rivera Cruz, 671 F. Supp. 103 (D.P.R. 1988) (granting summary judgment for lack of due process rights where plaintiff had been demoted from a trust to a career position), *rev'd on other grounds*, 858 F.2d 40 (1st Cir. 1988); see also Morales Narvaez v. Oficina del Gobernador, 112 P.R. Offic. Trans. 959, 967, 112 P.R. Dec. 761, 768 (1982) ("Absent a legislative mandate or other particular circumstances, the mere holding of a position for a long period of time does not crearte per se a property interest if an employee accepted a confidential position.").

Accordingly, because the court finds that the plaintiff has no rights to due process for the demotion, the court must **GRANT** the defendants' motion on this ground and dismiss the plaintiffs' due process claim.

### D.    Equal Protection

The amended complaint references a violation of the plaintiff's right to equal protection but it provides no specific factual allegations to distinguish his equal protection claim from his political affiliation claim. The plaintiff's failure or inability to make this distinction is dispositive of the equal protection claim; where there is no distinct basis for alleging an equal protection violation, that claim is subsumed by the First Amendment claim. See Pagan v. Calderon, 448 F.3d 16, 36-37 (1st Cir. 2006) ("so long as [plaintiff's] allegations of political discrimination fit within the contours of the First Amendment, they are, *a fortiori*, insufficient to ground a claim that the politically-inspired misconduct violated equal protection guarantees.").

Therefore, the plaintiff's equal protection claim, to the extent it has been alleged, is **DISMISSED**.

### E.    Supplemental State Law Claims

The plaintiff also brought suit under several state laws. "As a general principle, the

**Civil No. 09-1603 (GAG)** 10

unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis. Id.; see also Rodríguez Cirilo v. García, 908 F.Supp. 85, 92 (D.P.R. 1995) ("The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. If federal law claims are dismissed before trial, however, the state law claims should also be dismissed.") (citation omitted).

Having dismissed all of the underlying federal claims in this case, the court declines to exercise supplemental jurisdiction at such an early stage over the related state-law claims. Thus, the court **GRANTS** the defendants' motion on this ground and dismisses all of the plaintiff's supplemental state-law claims without prejudice.

**IV. Conclusion**

For the aforementioned reasons, the court **GRANTS** the defendants' motion (Docket No. 19) and dismisses all of the plaintiff's federal claims. The supplemental state-law claims are dismissed without prejudice. Judgment shall be entered accordingly.[3]

**SO ORDERED**.

In San Juan, Puerto Rico this 2nd day of October, 2009.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ
United States District Judge

---

[3] The court reiterates its earlier comment in Ocasio-Hernandez v. Fortuno-Burset, --- F.Supp.2d ----, 2009 WL 2393457 (D.P.R. 2009), that after Iqbal "even highly experienced counsel will henceforth find it extremely difficult, if not impossible, to plead a section 1983 political discrimination suit without 'smoking gun' evidence." Id. at *6 n.4. In effect, Iqbal has created a new *de facto* federal abstention ground for political discrimination cases in the guise of a 12(b)(6) motion to dismiss standard.